## ANTICICH *v.* MOTOR CAR INN GARAGE, INC.

[87 South. 279, No. 21423.]

1. PRINCIPAL AND AGENT. *Dealer agent of owner of automobiles shipping to dealer reserving title.*

   Where the owner of automobiles ships car to a selling dealer and reserves title in himself, the selling dealer is the agent of the owner, in so far as the public is concerned.

2. PRINCIPAL AND AGENT. *Selling agent, representing secondhand car to be new, acts within scope of authority.*

   When the selling agent represents that a secondhand car sold is a new car, he is acting within the scope of his authority, where innocent purchasers are concerned, and such purchasers may sue the owner for breach of warranty.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by Mrs. Mary G. Anticich against the Motor Car Inn Garage, Incorporated. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Mize & Mize,* for appellants.

We submit, that, taking all of the evidence into consideration, the agency of McLaughlin was clearly demonstrated and it was a question for the jury as to what was the difference in value between a new car and the one she received. Mrs. Anticich, of course, testified that she did not know it was a used car when she accepted it, and this being true, it was a fraud perpetrated upon her by the appellee and it was liable to her. When she purchased a new car, there was of course an implied warranty that she would get a new car, and if a second hand car is delivered to her, appellee is liable.

But, we submit, even if McLaughlin was not the agent of appellee, the appellee herein would still be liable because the testimony shows that it sold this car to McLaughlin for a new car. If we take the testimony of Linrose as being absolutely true that this was a straightout sale to McLaughlin, and eliminate all features of the contract and call it a straight out sale to McLaughlin, yet Mr. Linrose, the president of appellee company, testified that they sold this identical car to McLaughlin for a new car and that it had never been used but was a new car. The testimony then shows that McLaughlin had the car shipped to Biloxi from the New Orleans house of appellee and that it was delivered to Mrs. Anticich immediately and that McLaughlin never did use the car at all. Therefore, the appellee warranted the car to McLaughlin as a new car and this warranty inured to the benefit of Mrs. Anticich, because McLaughlin delivered it to Mrs. Anticich as soon as received from the appellee and never used it at all then when she paid the purchase price of a new Roamer car to McLaughlin, she then had a right of action against the original seller of the car, the appellee, on its breach of warranty to McLaughlin, because the evidence demonstrates conclusively that the car delivered to Mrs. Anticich was a used and second-hand car.

As to liability of an undisclosed principal, see 21 R. C. L., p. 890, sec. 63, and see 31 Cyc., p. 1234, as to having required McLaughlin to advertise and keep an office for the purpose of handling these cars, holding that the principal holding out one as his agent is estopped to deny the agency.

We therefore submit that the case should have gone to the jury and that for the failure of the trial court to submit it to the jury, the case should be reversed and remanded.

No brief found in the record for counsel for appellee.

SAM C. COOK, P. J., delivered the opinion of the court.

The appellant began this suit in the circuit court of Harrison county. The declaration avers that the appellee sold to her a certain "Roamer" automobile for the sum of two thousand nine hundred dollars; that the defendant warranted that the car was new in all respects, and that it was in perfect order and condition. Appellant further charges that she paid two thousand nine hundred dollars upon the receipt of the car; that she afterwards discovered that the car was a secondhand car, and was not worth more than one thousand two hundred dollars, and she therefore sues for one thousand seven hundred dollars. To this declaration was filed the general issue.

Appellant produced evidence tending to show that the car was a secondhand car. Evidence introduced by the defendant tended to show that the car was a new car as represented. The real contest developed upon the trial was whether or not the defendant named in the declaration was the seller of the car in question. The defendant was a Louisiana corporation, with its main domicile in New Orleans, and the theory of the plaintiff was that it was doing business in Biloxi, Miss., through an agent by the name of J. M. McLaughlin.

We assume that the trial judge directed a verdict for the defendant upon the theory that the evidence did not warrant the jury in finding that Mr. McLaughlin was the

agent of the defendant.   The evidence offered by the plaintiff along that line forced the plaintiff to go into the camp of the enemy.   The first is a letter of the president of the defendant company, addressed to the plaintiff, and is in words and figures as follows, to-wit:

"We are in receipt of a communication from the Southern Automobile Co., of Biloxi, Miss., stating that you, the purchaser of the Roamer car recently sold by us to them, our representative, are very much dissatisfied and perturbed over some statement being made to the effect that your car is a secondhand proposition.

"Permit the writer to state explicitly and with great emphasis that such statement is incorrect, erroneous, and is evidently a means concocted by some competitor with very unprofessional ethics, to poison your mind against the purchase.

"We consider such statement a direct reflection upon our integrity and standing in the automotive world, and if you will be kind enough to disclose the identity of whoever is guilty of such conduct in the competitive automobile world, we assure you that same will be taken up with the Bi-State Automotive Association and properly dealt with.

"It is to be remembered that we get cars shipped here from the factory sometimes without tire equipment because of the shortage, and therefore a delay in shipment, and we put on local equipment, which was the case with your car, Fisk-Cord tires and Firestone tubes.   It is possible in mounting these tires that a tube may have been pinched and the mechanic vulcanized same and used; however, we have no record of anything but new and first-class material ever going into any of our goods.

"Have you investigated what substitution that is possible to be made when making repairs to tires under local conditions, and under competitive practice?

"Rest assured that your car is a new car, and has never been in any one's hands but the Motor Car Inn Garage of New Orleans, La., as distributors, and we are ready to make an affidavit to that effect whenever you so desire.

"Any one trying to compromise your Biloxi dealer by any such report will certainly get our co-operation and direct support, and if necessary will go to the mat with the proof, court or otherwise, to vouch for the validity and character of the goods as represented.

"We would have you understand that we at all times stand behind everything we sell, and have a factory behind us that will protect every purchaser of a Roamer car and give you a degree of protection that you never received before.

"We will appreciate anything in the way of information that tends to reflect upon either the car or the dealer, or the distributor of Roamer cars in this territory, and assure you of fair dealing and full protection under our policy.

"Trusting you will be fair and permit our dealer to co-operate with you in the care and upkeep of your car, and that you will allow no one to prejudice your mind in this matter, and that you will enjoy the individuality of the Roamer sport car to such degree that all this trouble will pass out of your mind, and you will become a booster.

"Yours very sincerely,

"MOTOR CAR INN GARAGE, INC.,

Per K. E. LINDROSE."

The next bit of evidence was the contract of the defendant and his representative at Biloxi, viz.:

"This agreement, made and entered into this 25th day of October, A. D. 1919, by and between Motor Car Inn Garage, Inc., city of New Orleans, La., state of La., a corporation existing under the laws of the state of Louisiana, party of the first part, hereinafter called the 'company,' and J. M. McLaughlin, city of Biloxi, state of Miss., party of the second part, hereinafter called the 'dealer,' witnesseth:

"That the parties hereto in consideration of the benefits to be derived from the faithful performance of this agreement, do hereby covenant and agree with each other as follows:

"The company agrees, and does hereby extend to the dealer, the exclusive right to sell, during the continuance of this contract, Roamer automobiles in the following described territory: Jackson, Harrison, Hancock, Pearl River, Stone, and George counties.

"The dealer agrees to sell Roamer automobiles strictly within the confines of the territory mentioned in this agreement, and under no circumstances to sell Roamer automobiles outside of said territory without the permission of the company.

"The dealer agrees to thoroughly work all portions of the territory during the continuance of this contract, and the company agrees not to ship any cars to other persons, firm or corporation, for sale in said territory, during the existence of this agreement, except, when, in the opinion of the company, the dealer is not working the territory to the best advantage, in which case the company reserves the right, on giving the dealer ten days' written notice, to enter such territory and sell direct, deducting any territory so entered by it from territory hereby allotted.

"The dealer hereby agrees to buy from the company, and the company agrees to sell to the dealer, ten Roamer cars according to the following shipping schedule, which shall be the minimum rate of delivery:

"Shipments: July, Aug., Sept., Oct., Nov., Dec., Jan., Feb., March, April, May, June. Total. Cars to be delivered from our floor in New Orleans as called for, McLaughlin to stand freight from New Orleans to destination, all sales made f. o. b. floor.

"If in case of fire, strike, or other unavoidable cause, the company is delayed or prevented entirely from filling orders, they shall not be held for damages.

All claims for shortage must be made in ten days after receipt of goods, or no allowance will be made.

"A shipping receipt for goods releases the company of all responsibility and places it with the carrier. No claim for delayed shipment of goods herein ordered on account of shipping by any other than specified routes, will be made or allowed.

"It is understood by the dealer that there will be an extra charge for crating, packing, double decking, sixty-inch thread, right-hand steering wheel, or any equipment that is out of the ordinary and not furnished on the standard model ordered.

"The company's responsibility for goods in transit ceases when goods passed into the hands of the transportation company. The title to the goods delivered under this contract to remain in the manufacturer until they shall have received the money for same, and upon failure to make payment by the dealer, and the company, by payment to the factory, may repossess itself of said goods.

"The dealer agrees to deposit with the company upon the signing of this agreement the sum of fifty ($50) dollars to be held by the company as guaranty for the satisfactory performance of this agreement, and to be returned to dealer upon the termination of this contract, less any amount that may then be owing the company. Upon the failure of the dealer to accept any pay for the number of cars contracted for by him, said dealer agrees that said deposit or any part thereof shall be applied to account for parts and other charges owned by said dealer to said company, or to next season's business, or to be applied upon such damages as said company may have suffered because of such dealer, or shall be refunded to said dealer at the option of said company.

"Terms: The company will allow the dealer a discount of 15% (fifteen per cent.) from the current price of its automobiles.

"The company agrees to allow the dealer a discount of fifteen (15%) per cent. on all invoices covering repairs and repair parts for which the dealer agrees to pay in cash at time of delivery (C. O. D.) or by remittance to company on or before the 10th of the month following date of purchase, at the option of the company, and to return to factory, charges prepaid, for examination and inspection, all parts claimed to be defected within ninety days from date of delivery of car to dealer, before any replace-

ment or allowance will be made upon said parts, except tires, horns, lamps and other accessories which are guaranteed by their respective makers.

"The dealer agrees that for replacements all defective materials will be returned to factory within ten days from date of receipt of new material, and that no allowance will be made upon defective parts unless returned, expressed or freight prepaid, within the time above specified.

"The dealer agrees that he will faithfully represent and advertise the Roamer automobiles, and make all reasonable effort to promote and increase the sale thereof and keep in stock at least one current model made by the Barney Motor Car Company, to be used for demonstrating and exhibiting purposes, and maintain same in good order and repair.

"The dealer also agrees that he will maintain a showroom and repair station for the satisfactory display, care and repair of Roamer automobiles; respond promptly to all inquiries regarding the purchase of said automobiles; to sell all vehicles covered by this agreement and all other parts and adjustments, at the selling price, according to list to be furnished by the Barney Motor Car Company; and that he will not sell, or offer for sale, or accept, any other make of automobile or motor car, listing or selling for about the same price, without written permission from the company to do so.

"The dealer agrees to conspicuously display a sign on his place of business stating that his concern handles the Roamer automobile, and further agrees to advertise Roamer cars in the newspapers for his territory to an extent satisfactory to the company. All advertisements are to be prepaid by the Barney Motor Car Company or their recognized advertising agents and all necessary plates or mats furnished to the publisher without cost to the dealer. The advertisements are to be exclusively on the cars and a proof of each advertisement is to be submitted to the company.

"The dealer agrees to sell cars to the consumer under the following guaranty only:

" 'We warrant each new motor vehicle manufactured by us, whether passenger car or commercial vehicle, to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at our factory any part or parts thereof which shall, within ninety days after delivery of such vehicle to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on our part, and we neither assume, nor authorize any other person to assume for us, any other liability in connection with the sale of our vehicles.

" 'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of our factory in any way so as, in our judgment, to affect its stability or reliability, nor which has been subject to misuse, negligence, or accident, nor to any commercial vehicle made by us which shall have been operated at a speed exceeding the factory-rated speed, or loaded beyond the factory-rated load capacity.

" 'We make no warranty whatever in respect to tires, rims, ignition apparatus, horns, or other signaling devices, starting devices, generators, batteries, speedometers or other trade accessories, inasmuch as they are usually warranted separately by their respective manufacturers.'

"All accounts for parts shall be due and payable on the tenth of each month for all parts shipped during the preceding month, and the Barney Motor Car Company will ship repair parts, extras, and accessories C. O. D. to such dealers as do not have sufficient deposit money on hand to guarantee payment of same. The Barney Motor Car Company will ship all parts C. O. D. to dealers as have no

funds on deposit with said company, regardless of any deposit which the dealer may carry with the company, unless such orders are received from company direct, with instructions to charge to the company's account.

"It is mutually agreed that, should the dealer violate any covenants herein contained, or shall fail to pay for any work performed, cars, merchandise or parts sold to him by the company, or his financial condition become such that in the opinion of the company said dealer will be unable to perform the terms of this agreement, or the company believes dealer is not properly pushing the sale of its cars, he hereby reserves the right, at its election and without making itself liable, in any manner, for any claim or action for damage, or without waiving or affecting any of its existing rights against the dealer, to cancel or terminate this agreement by giving the dealer written notice, by registered mail, of its election to cancel this contract, whereupon the rights of the dealer, under or in any way arising out of this agreement shall be terminated or canceled.

"The dealer agrees that he will not assign this contract or any right or benefits therein without first obtaining written consent to said assignment from the company.

"It is hereby mutually agreed that responsibility of the company for delivery of cars, parts, equipment and extras shall cease on delivery of same in good order to the transportation company; that all deliveries are subject to delay owing to accidents, strikes, fires, and other causes beyond control of the company; that no claims for shortages will be allowed unless made by dealer in writing, within ten days of receipt of shipment.

"It is further mutually agreed that this agreement, unless otherwise terminated as herein provided, shall expire by limitation July 1, 191—, or may be terminated by either of the parties hereto by giving not less than ten days' written notice to that effect to the other party; that failure by either party to exercise an option or require performance of any of the provisions of this agreement shall

in no way be construed as a waiver of future breaches of such obligation or provision; that all provisions herein have been read and understood by the parties hereto; and that no correspondence shall be considered as a part hereof unless specifically providing on its face that it shall be considered as a part of this contract.

"In witness thereof the parties hereunto have caused this agreement to be executed and signed in duplicate, and have hereunto set their hand and seal the day and year above written."

It will be observed that the defendant company in its contract with its Biloxi agent or representative, confers the exclusive right to sell Roamer cars in certain named counties, including the county of Harrison, and he may not sell elsewhere without the permission of the defendant company. The representative of the company is allowed fifteen per cent. discount upon all of the cars and supplies shipped to him. The dealer is not to sell any other car listing or selling for about the same price of the Roamer car.

Another provision in the contract reserves the title of all cars shipped in the defendant company, and, upon failure of the dealer to pay for the cars, the company reserves the right to repossess itself of the goods. This contract is carefully and skillfully drawn, and nowhere in it is the word "agent" or "representative" employed. The cars were shipped as, and remained, the property of the defendant. The "dealer" was, under the laws of the contract, given the exclusive right to sell the cars. His compensation was in form a discount, but he was the sole and only agency within a defined territory. The seller, under the terms of his contract with the defendant, was not the owner of the car in question; yet he, under his contract with the defendant, possessed the sole agency or power to sell the Roamer car within the prescribed territory, and under his contract he did not own the car. In other words, he was a selling agent, with the implied authority to bind his principal in warranting that the car was a new car. In

fact, the president of the defendant company insists that the car was a brand new car.   In makes no difference that the compensation, or commission, is termed discount, for the fact remains that the Biloxi dealer was selling the property of the defendant in consideration of a specified and liquidated sum of money, and he was the agent of the defendant in fact and in law.

There can be no doubt that the Biloxi dealer was authorized to sell at a fixed price, and this he did.   He was selling the property of the Motor Car Company, and both he and his principal admit that the car was sold as a new car, and now insist that it was a new car, while the purchaser insists that the car was a secondhand car.   That is the issue in the case, and should be submitted to the jury.

*Reversed and remanded.*