104 P.2d 736

**STEWART v. POTTER.**
No. 4559.

Supreme Court of New Mexico.
Aug. 3, 1940.

Lake J. Frazier, of Roswell, for appellant.

G. T. Watts and James T. Jennings, both of Roswell, for appellee.

MABRY, Justice.

Appellee Stewart recovered from appellant Potter a judgment in the sum of $200 actual and $100 exemplary damages upon suit for alleged false and fraudulent representations made in the sale to appellee of an automobile, and Potter, defendant below, appeals.

Appellee claimed he was given a used and repossessed car when he thought and was advised by the agent of appellant that he was purchasing a new one. The trial court fixed actual damages at $200 upon the theory that such was the difference in value between a new car and one which had been driven from 1500 to 1700 miles and repossessed from a former purchaser.

There is no dispute of the fact that the car actually had been driven such distance and that it had previously been sold and thereafter repossessed by appellant. The questions presented by the appeal are: (1) Was the $200 item of actual damages justified by the evidence? (2) Should the appellant, under the circumstances, have been held liable for any fraudulent acts or misrepresentations of the salesman? and (3) Did the court in any event, err in awarding punitive damages?

Under the first point appellant contends that the evidence does not support the court's findings that the car in question was sold as a new car. He claims that appellee knew the car had been driven some 200 miles, and to that extent, at least, the car was not new and that no proper measure of damages was employed by witnesses in fixing the difference in price between a car that had been driven some 200 miles as appellee understood to be the case with this one, and one which had in fact been driven some 1700 miles.

We are not intrigued with such hair splitting distinctions, made to discredit evidence of this character. We find that there is substantial evidence to support the trial court's findings that the car was sold as a new and unused car, except that, as was the custom in many cases, the car was driven from the distribution place at El Paso to Roswell, the appellant's place of business.

Appellee, as purchaser, knew of this and knew that it would account for the mileage that was shown by the speedometer at the time he took the car out for demonstration. It is obvious that the parties treated this mileage as not defeating the vehicle's characterization as a new car; and, it cannot be said that the witness (appraising the depreciation and fixing the difference be-

tween a new car and one sold and then repossessed, and which, in the meantime, had been used for two months and had been driven some 1700 miles by the defaulting first owner) did or would make any distinction in fixing value between a car shipped by freight or brought on its own power a distance of some 200 miles and at all times under the control of the dealer.

The testimony shows that about $200 is the amount of depreciation a new car of like value suffers when used as this one had been, and repossessed. The fact that no deduction was made in the calculation for the miles appellee knew the car had traveled in transport from El Paso is unimportant. At most, calculations bearing upon depreciation for use and repossession as here shown are approximate only. The witness undertook to vouch for no more.

Clearly, here we have a fraud practiced upon appellee who intended to purchase a new automobile and who was told he was getting it. Appellant would now defeat recovery of compensatory damages for the sole reason that there may be some slight uncertainty as to whether the exactly correct amount of depreciation was shown by the evidence and fixed by the court. We said in the recent case of Nichols v. Anderson, 43 N.M. 296, 301, 92 P.2d 781, 784, quoting with approval language from 15 Am.Jur., par. 23, p. 414: "There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. Formerly the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage, and not as to its amount; and that where it is certain that damage has resulted mere uncertainty as to the amount will not preclude the right of recovery."

We said also in that case that though "the basis for a rational estimate" might be scanty, and damages for breach of contract under certain circumstances "may not be computed with exactness" an award would nevertheless be made. In that case, which involved a wilful breach of contract, but not fraud, we further observed, employing language used in an earlier case, Gonzales v. Rivera, 37 N.M. 562, 25 P.2d 802, 803: "* * * We deem this such a case of wrongdoing that sound policy requires that the risk of estimating the damages too high or too low should be thrown upon appellants."

The Nichols case involved the question of fixing damages, if any, resulting from a former employee of a laundry and dry-cleaning establishment quitting his employment, and, contrary to contract, engaging in business in competition with his former employer and soliciting from such employer's customers. The Gonzales case had to do with fixing damages for breach of contract by one who had sold his busi-

ness agreeing not to engage in a competing business.

If for simple, though wilful, breach of contract unattended by the more vicious element of deceit and misrepresentation, we decline to quibble over the question of whether the exact damages suffered have been clearly established, we should experience no misgiving in sustaining the findings of a trial court under circumstances like those here presented, where wilful fraud and deceit are established.

We will not permit such slight uncertainty, if any, as to the amount of damage in a case of this character to disturb the findings and judgment of the trial court.

█ The rule is universal that: "If false representations of material facts are made in the sale or purchase of a motor vehicle, the innocent party may be entitled to rescind the sale or to recover damages on the theory of fraud and deceit." Vol. 11–12, Huddy Cyclopedia of Automobile Law, page 320, Sec. 234.

Appellant contends that appellee is entitled to recover only the difference between the actual value of the property obtained in the transaction and the amount or value of the consideration paid. This is in line with the rule that in such cases the purchaser is entitled to recover only the amount of loss actually suffered by the fraud or misrepresentation. This is known as the "out of pocket" rule, as distinguished from the "benefit of bargain" rule more generally adhered to. Appellee relies upon

the latter rule and the lower court likewise properly adopted it in computing damages.

██ There are two clearly conflicting lines of decisions upon this question as is shown by a rather full annotation to be found in 124 A.L.R. 37; but it is clear, as the note writer there observes, that the great weight of authority sustains the general rule that the defrauded purchaser may recover the difference between the real and the represented value of the property, regardless of the fact that the actual loss suffered might have been less. We see no reason to depart from the majority rule. It appears to us to be founded upon the better reason, particularly as it relates to cases of fraud and deceit. It was stated in the case of McDonald v. McNeil, 1918, 92 Vt. 356, 104 A. 337, 339, which follows the majority rule: "Courts holding to the other rule say that a plaintiff should not be allowed to speculate out of the defendant's wrongs; to that we reply, Nor should a defendant be allowed to gamble on it."

The cases supporting this view are fortified with an abundance of persuasive logic. We need not collect or further refer to cases supporting this view. We follow the "benefit of bargain" rule with no misgivings as to its appropriateness here or to the soundness of the reason which supports it generally.

█ In the assignment and point which charges that the court erred in holding the appellant responsible for the acts of his salesman upon any account, we likewise find no merit. Ordinarily the

principal is liable for the acts of his agent when acting within the scope of the agent's authority. There need be no citation of authority upon this point. The agent here had full authority to sell the car and therefore to make representations as to its quality and condition. There seems to be no doubt of this. This being true, the principal is bound by the agent's representations. 2 Berry on Automobiles, 1412, 1413. Even as to the representation that the second-hand car sold was a new one. Anticich v. Motor Car Inn Garage, 124 Miss. 822, 87 So. 279.

We have in addition to the representation made by the salesman, the acts of an office employee of appellant who made out the statement of account showing appellee charged with a new car and the new car price. True, appellant is not directly connected with this book-keeping and office transaction of estimating the items and making up figures to show a new car was sold, but this was done as part of the office routine and by the employee authorized to make such calculations and estimates. Appellant did ask appellee to bring in the car for the "500 mile check up" when the time arrived and reminded him not to drive the car over a certain rate of speed for "the first 500 miles", an ordinary precautionary warning to new car purchasers, we understand. It cannot be said, therefore, that appellant himself did not know of the sale and that it was not upon a new car basis, though it may be said that he did not talk with appellee during negotiations, or know of any misrepresentations of the agent complained of.

"The purchaser of an automobile from a dealer or manufacturer, in the absence of an understanding or knowledge to the contrary, may assume that it is new." 2 Berry on Automobiles, 6th Ed., 1414.

We should not have to marshal authority in support of the reason behind such rule. It accords with sound logic. But, not only do we have here a situation where the purchaser was trading with a dealer of new cars, but it was actually represented to him that he was getting a new car.

Appellant also urges that since the purchaser of the car, appellee, was something of a mechanic himself and therefore knew automobiles, that caveat emptor should apply. We see no place here for the application of that rule. The purchaser had a right, under the circumstances, to rely upon the representations of the seller or his agent that he was getting a new car. He was not called upon to make that minute and careful examination which might not have disclosed, even to a mechanic perhaps, that the car was not new but had traveled some 1500 miles; or that it had been in use by another purchaser for two months. We hold that no such burden rested upon the purchaser. Vol. 11-12 Huddy Cyclopedia of Automobile Law, p. 322; Vol. 7 Blashfield Cyclopedia of Automobile Law, Permanent Edition, § 4417 page 133; Ferguson v. Koch, 204 Cal. 342, 268 P. 342, 344, 58 A.L.R. 1176.

Complaint is also made of the item of $100 for punitive damages assessed by the court. This point in view of the record, presents a somewhat interesting question.

Ordinarily punitive damages are not allowed for breach of contract, but there are exceptions to this rule where the breach of contract is accompanied by a fraudulent act. 7 Blashfield Cyc. of Automobile Law, Permanent Edition, § 4536, page 189. Such damages are allowable where the wrong doing is aggravated, wanton, or maliciously intentional. 24 Am. Jur. 51. The court here found deceit and an intentional misrepresentation or fraudulent act on the part of the agent which, obviously because of the relationship simply, was held chargeable to the principal.

Appellant argues that the evidence does not support the judgment as to the item of punitive damages, whatever might have been the wrong of the agent. It is the rule, supported by the better authority, that the principal must be in some way connected with the fraud, or tort of the agent by participation or ratification, to support, as against him, punitive damages therefor. See 15 Am.Jur. pp. 728–733, Sec. 287–290; 17 C.J. 989, 990, Pars. 290, 291, for a discussion of the rule and citations.

It is held by the United States Supreme Court and a majority of State courts that the principal, or master, is liable for punitive or exemplary damages only in cases where he has authorized, participated in or ratified the acts of the agent. It may be said, however, that, as to numbers the majority in favor of this rule is not overwhelming. In fact the majority adhering to this rule as opposed to the other one which holds liability attaches to the principal, or master, by virtue of the relationship alone, may be said to be slight. But we favor the rule observed in the leading case of Lake Shore, etc., Ry. Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 263, 37 L.Ed. 97, where it is said: "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent."

The Supreme Court in that case also quoted with approval language used by Justice Brayton of Rhode Island, in one of the early cases of the kind reported, Hagan v. Railroad Co., 3 R.I. 88, 62 Am. Dec. 377, where it is said: "If in such cases, or in any case of a civil nature, it is the policy of the law to visit upon the offender such exemplary damages as will operate as punishment, and teach the lesson of caution to prevent a repetition of criminality, yet we do not see how such damages can be allowed, where the principal is prosecuted for the tortious act of his

servant, unless there is proof in the cause to implicate the principal and make him particeps criminis of his agent's act. No man should be punished for that of which he is not guilty."

Mechem on Agency, 2d Ed., 1582, 1583, par. 2014, tells us that punitive or exemplary damages as generally applied are, according to the better opinion, "indefensible in legal principle," though many courts award such damages. The author goes on to say: "If they are to be awarded at all, it would seem that, however much they may be justified against the guilty servant or agent himself, they should not be awarded against the principal or master unless it can be shown that in some way he also has been guilty of the wrongful motives upon which such damages are based. * * * the cases which are believed to be the best considered have adopted this view."

See 8 R.C.L. 597, Secs. 142–144; 17 C.J. 989, Pars. 290, 291; Gill v. Selling et al., 125 Or. 587, 267 P. 812, 58 A.L.R. 1556; Cleghorn v. New York, etc., Ry. Co., 56 N.Y. 44, 47, 15 Am.Rep. 375; Sutherland on Damages, 4th Ed., 1333, Par. 409 et seq.

Appellee does not question the proposition that the better rule is as we have here stated it. In fact he assumes in his brief that there must be authorization or ratification by the principal, and then argues that nevertheless the uncontradicted evidence will support a finding of such conduct.

We are committed to the almost universally recognized doctrine of punitive damages (Colbert v. Journal Pub. Co., 19 N.M. 156, 142 P. 146), though we did not there decide, for the reason the question was not properly presented, the circumstances under which such damages would be imposed upon the principal for acts of the agent.

So, assuming as both parties to this appeal do and as we hold, that the rule is, absent participation, authorization or ratification of the fraudulent act, the principal cannot under such circumstances as here presented be held for the fraud or deceit of his agent, we must conclude that under the evidence and the findings of the court the item for punitive damages was improperly imposed, though the judgment as to compensatory damages will be sustained.

Looking to the record we find in the document entitled "Opinion and Findings of the Court", the following:

"The Court will further find that the car sold to the plaintiff had a value of $200.00 less than a new car, by reason of the fact that it was a repossessed car.

"The Court does not say that Mr. Potter is to blame for the transaction; I think perhaps his salesman got a little over zealous to make the deal, and Mr. Potter had to suffer for it, since he owns the business.

"The question also is raised here asking for punitive damages; The Court is somewhat inclined to allow some damages along

that line for the salutary effect it may have; I think the public is entitled to some consideration.

"Mr. Reese (Counsel for defendant below) If the Court please, there should not be any damages assessed on that line, unless you can show wilful or wanton conduct on the part of the—

"The Court: I think it was wilful. I may be wrong, but that is the way it impresses me. I will allow $100.00 punitive damages."

Appellant made and filed specific objections to the Court's conclusion that he was liable for punitive damages and he likewise called the attention of the court to the defect and alleged error in such conclusion by a proper request for findings and conclusions upon the point. Appellee offered no specific findings of fact or conclusions of law, but announced that he adopted those of the court as his own.

It is unfortunate that the record does not show the completion of the statement of appellant's counsel as shown above. We do not know whether the completed statement would have employed the word "principal" or the word "agent". The party relying upon a finding to support him must, of course, be able to point to it. If we assume that counsel intended to use the word "principal" or that the court so appraised the language, though not in fact shown in the record, still to follow appellee we would have to charge the court with clear inconsistency. It had already stated immediately before this, that "the court does not say that Mr. Potter is to blame for the transaction." The court charges overzealousness, rather on the part of the salesman and holds Potter, appellant, liable only because "he owns the business," and not because he participated in or was to blame for the misrepresentations and deceit employed in the transaction.

It might be suggested, though neither counsel raised the question or argues it, that the language of the court hereinbefore set out was employed as the opinion of the court rather than as representing its findings. This question we pass, however, because counsel for both parties have treated this language as findings of fact. It seems clear enough that the trial court intended to impose the punitive damages upon the appellant not because he was "to blame for the transaction", but rather because he was "the owner of the business." As we have shown, there is considerable authority to be found in support of such theory of liability, but it is contrary to what we consider the better rule.

For the reasons given, the judgment will be modified to the extent that the item of $100 for punitive damages will be disallowed and the judgment then affirmed in the sum of $200. The cost of this appeal will be assessed two-thirds to be paid by appellant and one-third to be paid by appellee, and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.