394 P.2d 978

**Clyde C. HONAKER and Veronica Honaker, Plaintiffs-Appellees,**

**v.**

**RALPH POOL'S ALBUQUERQUE AUTO SALES, INC., a corporation, and Robert Morton, Defendants-Appellants.**

No. 7392.

Supreme Court of New Mexico.

June 15, 1964.

Rehearing Denied Sept. 16, 1964.

Key, Cohen & May, Albuquerque, for appellants.

Nordhaus & Moses, Fred Trechel, Albuquerque, for appellees.

CHAVEZ, Justice.

This is an appeal from a judgment against defendant-appellant, Ralph Pool's Albuquerque Auto Sales, Inc., a New Mexico corporation engaged in the automobile sales business. The judgment awarded plaintiffs-appellees, Clyde C. Honaker and Veronica Honaker, damages in the sum of $1,000.

The parties involved are the plaintiffs, residents of Bernalillo County, Clyde C. Honaker and Veronica Honaker, his wife, and the defendant corporation, acting through its president Ralph Pool, its Menaul Boulevard sales lot manager Jack Pearson, and a salesman Robert Morton. Plaintiffs alleged and the trial court found that de-fendant corporation, through its salesman Robert Morton, made material misrepresentations regarding a 1961 Oldsmobile automobile purchased by plaintiffs from defendant corporation. The alleged misrepresentations first occurred on a Sunday in October, 1961, when plaintiffs passed defendant's Menaul Boulevard sales lot and noticed a 1961 Oldsmobile parked on the lot. The plaintiffs drove in and were met by Robert Morton who showed them the automobile in question. At this time, the Honakers asked Morton if the car was a new car and Morton replied that it was. Plaintiffs took a trial drive in the car and, while driving, noticed that the car's speedometer had 1400 to 1500 miles on it. When asked about this, Morton stated that the mileage was put on the car because it had been driven from the dealer they got it from, either in Chicago or Detroit. Plaintiffs then offered their old car, a 1959 Oldsmobile, and $2,000 as payment for the new car. This offer was rejected and Morton offered to show plaintiffs other used cars in that price range. Both plaintiffs replied that they were only interested in a new car and not a used car. Reluctant to lose a possible sale, Morton suggested that plaintiffs look at some new Oldsmobiles at the East Central sales lot. Since Mrs. Honaker and the children were hot and tired, they drove the old 1959 car to Honaker's home while Mr. Honaker went to the other car lot with Morton. In a short while, Mr. Honaker and Morton

arrived at Honaker's home in a blue and white 1961 Oldsmobile. Leaving Morton in the car, Mr. Honaker went inside and called a Mr. Eckert, whose name appeared on the brake and light sticker of the car. Upon finding out from Mr. Eckert that the blue and white car was not new, Mr. Honaker told the salesman that he was not interested and Morton drove away.

In November, 1961, Morton telephoned Honaker, stating that they had a revaluation in their inventory and that he could trade for $2,050 difference. That afternoon, Honaker stopped by the car lot and Morton told him that he could make the trade for the difference of $2,050 and plaintiffs' old car, plus the license tax which brought it to $2,085. Honaker accepted this offer and, on the evening of November 14, 1961, Honaker transferred title to his old car, gave Morton a check for $2,085.50, and signed a "Retail Buyer's Order" which stated at the top:

| "Purchaser | Clyde C. Honaker | | Address | 2819 Claremont NE |
|---|---|---|---|---|
| | | | Phone | AL 59614 |
| Enter my Order for | one new | Yr. 61 | Make | Olds |
| Type | Halcp | | Color | Bronze " |

———◆———

At this time Morton said that the new car warranty had to come from the dealer that they bought the car from; that they would notify the dealer and he would fill in the guarantee, and it would be available to pick up about the same time Honaker got his license.

Jack Pearson, the sales manager on the car lot, testified that he told Morton the car was not a new car and that he would not approve an order with the word "new" on it. Morton then stated: "I do not believe he will buy it if I tell him it is used." Pearson told Morton to take another order and leave out the word "new" and to explain to Honaker that it was not a new car. Two days later, Morton contacted Honaker again, re-questing him to sign a new order, giving as a pretext that, by mistake, the license transfer and tax fees were improperly set out on the first order. Mr. Honaker signed the new order and, upon his wife's return, they both discovered that the word "new" had been deleted.

On November 24, 1961, Mr. Honaker went to the Menaul Boulevard sales lot to inquire about his license plates and new car warranty, Morton told Honaker the new car warranty had not come in and that it looked like they would have to handle the warranty themselves. Honaker drove to the East Central lot for his license plates and, upon receiving them, noticed that the temporary registration certificate showed

the car had a prior registration in Arizona. Brushing aside the protestations of the secretary, Mr. Honaker went into the office of the president, Ralph Pool, and complained of the deception. Pool told Honaker to go to the Menaul Boulevard lot "and we will get this thing straightened out." Honaker then said: "Mr. Pool, the only thing that will satisfy me is to get a new car, which is what I bought." Honaker then went to see Pearson, who offered Honaker a Buick in place of the car Honaker had purchased. Honaker rejected this proposal and requested the return of his old car and his money back. Honaker was told to return the next day and they would see if they could obtain his old car which had been sold. At that time, Honaker's offer to leave the 1961 Oldsmobile at the lot was rejected by Pearson. When Honaker returned to the lot the next day, he was offered $100 by way of settlement, which he rejected. Five days later, Honaker had a letter delivered to defendant corporation, in which he made tender of the 1961 Oldsmobile and requested the return of his old car and his money back. Plaintiffs then received in the mail a letter from defendant corporation, which they returned unopened, and from and after November 30, 1961, they had the 1961 Oldsmobile placed in storage.

The 1961 Oldsmobile was taken out of storage on December 5, 1961, since Pool again offered to satisfy Honaker, telling him that they had cars coming in all of the time and for Honaker to stop by every day to check. Finally, after numerous talks with Pool and Pearson, Honaker placed the 1961 Oldsmobile back in storage on December 27, 1961.

On December 28, 1961, plaintiffs filed a complaint against defendants, alleging in the first cause of action that:

"II. In the period between October 15, 1961 and November 16, 1961, and while acting in his capacity as such salesman for the defendant corporation, the defendant Morton, knowing such representations to be untrue, falsely represented to plaintiffs that a certain 1961 Oldsmobile 98, Motor No. 618C 01088 on defendant corporation's sales lot was a new automobile, which representation as said defendant Morton then and there well knew was false and untrue in that such automobile was a used automobile, and that such representation was a material representation with respect to the sale of said automobile and that being induced thereby and in reliance thereupon, the plaintiffs did agree to buy the said automobile and did pay the defendant corporation the sum of $2085.50 by delivery on November 14, 1961 of the personal check of plaintiff Clyde C. Honaker in such amount, and did

"transfer and deliver on said date a 1959 Oldsmobile Special, Serial No. 598K 03398, New Mexico 1961 License Number 260391, at a trade-in value of $2945.00."

Plaintiffs prayed for the return of their old car, that the sale be rescinded, and for damages in the sum of $5,030.50. In the second cause of action, plaintiffs adopted the allegations of the first cause of action and prayed for the storage costs and reasonable rental value of the automobile, together with punitive damages.

Defendant Ralph Pool's Albuquerque Auto Sales, Inc. answered, denying all material allegations, including the allegations of fraud, and as affirmative defenses alleged that plaintiffs were estopped from claiming fraud, since they accepted delivery of the automobile with full knowledge that it had been driven at least 1500 miles, as shown on the speedometer; that the car did not have affixed to it a new car sticker; that plaintiffs agreed to accept $100 from defendant corporation in full accord and satisfaction; and that by continuing to drive and maintain control over the car, plaintiffs waived any right of rescission.

On March 19, 1962, a motion was made by plaintiffs for the appointment of a receiver, alleging that the value of the car was decreasing, the storage costs were increasing, and that the car should be sold and the proceeds placed in the hands of the court.

At the hearing on the motion, the parties attempted to reach a solution by arranging a sale of the car at a price mutually agreeable to both. Such negotiations were not concluded, however, and on March 27, 1962, plaintiffs withdrew the car from storage and commenced to use it.

During the trial, at the conclusion of plaintiffs' case, defendants moved for judgment stating as grounds: (1) The plaintiffs' action is one for rescission of contract; (2) the plaintiff did not have the right to rely upon Morton's statements, because plaintiff had established in his mind that Morton had lied about the condition of another car; (3) the plaintiffs have failed to prove any pecuniary damages, a necessary element of fraud and deceit; (4) the plaintiffs are excluded by the doctrine of caveat emptor since (a) the car did not have a new car sticker, (b) there was mileage on the car, (c) the upholstery at the top of the car was torn, (d) and the contract was modified by the second order which did not have the word "new" on it; and (5) the plaintiffs operated the car as their own and obtained license plates for it in 1961. The trial court stated it would defer ruling on these points until the conclusion of defendants' case.

At the conclusion of all of the evidence, the trial court stated its ruling, holding that the car was sold to plaintiffs as a new car, that plaintiffs were entitled to the representation that they were buying a new car, but that no punitive damages would be allowed.

The court expressed some concern over the matter of damages and stated:

"* * * If the plaintiff had elected to sue for breach of contract and damages, I would have an easier time arriving at some conclusion in this thing. * * * I think that, within the scope of the evidence, plaintiff could amend to have the contract affirmed and the Court could give damages for pecuniary loss by reason of what the court is going to find: Express representation of the sale of a new car and, in fact, selling and receiving a used car. Might we see if the plaintiff would consider such an amendment?"

The plaintiffs answered:

"We would, at this time, state to the court that, with the court's approval which it has indicated it would grant, we would like to move to amend our complaint to charge fraud and to seek pecuniary damages rather than rescission."

Defendants objected to any amendment and the objection was overruled. The trial court made the following conclusions of law:

"3. That plaintiffs were entitled to amend their complaint to withdraw the claim for rescission, and to sue on the contract, seeking damages for fraud; that defendant's new motion to reconsider the allowance of such amendment (filed since the trial and arguments) is overruled.

"4. That the proof of fraud is clear and convincing, and plaintiffs are entitled to recover from defendants $1,000.00 as actual pecuniary damages sustained by reason of their having acquired a used car rather than a new car."

Judgment was entered accordingly and this appeal followed.

Appellants' point I is that:

"The court erred in inviting and allowing the plaintiffs to orally amend their cause of action from that of rescission to an action for damages at the close of the case, and after both parties had rested, for the reason that the plaintiffs had elected to rescind on November 30, 1961 and thereafter brought this action to rescind, which actions constituted an election of remedies, and the selection of the remedy of rescission is a waiver of the right to recover damages in an action at law for fraud and deceit."

The question before us concerns the time of application of the doctrine of election of remedies. Appellants contend that rescission occurred when the Honakers made tender of the car by letter of November 30, 1961, but if an election was not made on that date, that it was certainly made when appellees filed suit.

In support of the proposition that New Mexico follows the doctrine of election of remedies, appellants cite the following cases: Bell v. Lammon, 51 N.M. 113, 179 P.2d 757; Thrams v. Block, 43 N.M. 117, 86 P.2d 938; Montgomery v. First Mortgage Co., 38 N.M. 148, 29 P.2d 331; and Williams v. Selby, 37 N.M. 474, 24 P.2d 728. Inasmuch as we are concerned here with the time of the application of the doctrine, not its recognition, we find it unnecessary to discuss these cases, but confine ourselves to the comment that statements made in those cases regarding the doctrine are dictum.

Regarding the question of the proper time for the application of the doctrine of election of remedies, we are directed by appellants to an excellent Annotation in 6 A.L.R.2d 10, wherein two propositions of law are stated. Some cases hold, as a general proposition, that the commencement of a suit (for rescission) is of itself a conclusive election of remedies. To the contrary, other courts take the view that commencement of the action is not of itself a conclusive choice of remedies. We find the latter view to be the better and more modern view for, as we view the issues in the case before us, it is a question of the effect of our Rules of Civil Procedure upon the determination of inconsistent causes of action.

On the question of the inconsistent remedies of damages for breach of express contract or quantum meruit, in Campbell v. Hollywood Race Ass'n, 54 N.M. 260 221 P.2d 558, we held that one could not sue on express contract and recover in quantum meruit. This holding was relaxed in State ex rel. Gary Electric v. Fireman's Fund Indemnity Company, 67 N.M. 360, 355 P.2d 291, 84 A.L.R.2d 1072, where we said:

"We now announce that recovery should be allowed on quantum meruit even though the suit was originally framed on express contract; and that amendment to pleadings be freely allowed to accomplish this purpose at any stage of the proceeding, including considering the pleadings amended to conform to the proof. We are impressed that by this holding we are bringing our procedure into line with the decisions in the federal courts and into harmony with the letter and spirit of our rules of procedure, §§ 21–1–1(15) and 21–1–1 (54) (c), which were copied from the Federal Rules of Civil Procedure. * * * *"

See also, Harbin v. Assurance Company of America, (10 CCA 1962), 308 F.2d 748. Rule 8(e) (2), (§ 21–1–1(8) (e) (2), N.M. S.A., 1953 Comp.) provides that a party may state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or equitable grounds, or on both. Thus, in an original complaint or in an amended complaint a party may plead inconsistent claims. Auto-

mobile Ins. Co. of Hartford, Conn. v. Barnes-Manley Wet Wash Laundry Co., (10 CCA 1948), 168 F.2d 381; Blazer v. Black, (10 CCA 1952), 196 F.2d 139; Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741. We find the following statement by Judge Murrah in Bernstein v. United States, (10 CCA 1958), 256 F.2d 697, to be most persuasive:

> "Whatever may be said for the common law doctrine of election of remedies before the advent of the Federal Rules of Civil Procedure, we are certain that there is no room for its application under applicable rules of procedure, according to which every pleading is a simple, concise statement of the operative facts on which relief can be granted on any sustainable legal theory 'regardless of consistency, and whether based on legal or on equitable grounds or on both'; Rule 8(e) (1) (2) F.R.Civ.P., and, where the prayer or demand for relief is no part of the claim and the dimensions of the lawsuit are measured by what is proven. * *"

Appellants, in their reply brief, seek to counteract this pitfall by stating that under § 21–3–1, N.M.S.A., 1953 Comp., the rules of procedure, as adopted by this court for use in the district courts, shall not abridge, enlarge or modify the substantive rights of any litigant; that the doctrine of election of remedies is a doctrine of substantive law; and, therefore, the rules of procedure shall not apply. This contention is without merit for the following reasons.

First, we have defined substantive law as that which creates duties, rights and obligations. Johnson v. Terry, 48 N.M. 253, 149 P.2d 795. In Petty v. Clark, 113 Utah 205, 192 P.2d 589, substantive law is defined as:

> " * * * the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action, as distinguished from adjective law which pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective. * * *"

In Bremen Mining and Milling Company v. Bremen, 13 N.M. 111, 79 P. 806, a demurrer was sustained to plaintiff's first complaint requesting redemption under a trust deed. Plaintiff amended, requesting cancellation of the trust deed and that title be quieted in plaintiff. Defendant moved to strike on the ground that the amended complaint set up a new and inconsistent cause of action, contending this was improper. Leave was given to amend again, but plaintiff did not do so and the cause was dismissed. In reversing the trial court's action and holding that the trial court erred in dismissing the amended complaint, we stated:

> " * * * 'The facts upon which the plaintiff's right to sue is based, and up-

on which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong, make up the cause of action.'

"Under these definitions it cannot be contended successfully that an entirely new and distinct cause of action was set out by the amended complaint, as practically the same facts were set out in both. The trust deed and bonds which lie at the foundation of the action are relied upon in both, and they would constitute substantially all of the proof necessary to a recovery under either the original or amended complaint. The mere fact of the allegation of one or two additional facts as a basis for a prayer for different relief we deem immaterial, as it was one and the same transaction out of which the right of action arose. * * *

" * * *

"In the case now before this court the cause of action grew out of the same transaction, the parties are the same, and the facts are substantially the same; only the relief sought being different. It cannot be a new and different cause of action within the limitation above referred to."

In Newbold v. Florance, 54 N.M. 296, 222 P.2d 1085, after the adoption of new rules patterned after the Federal Rules of Civil Procedure, we said:

" * * * A new cause of action may be alleged in an amended complaint, provided it is founded on facts not wholly foreign to the facts originally pleaded. * * *"

In the case before us, assuming the truth of the facts pleaded and the same parties and transaction, it would seem that appellees are entitled to relief in either damages or rescission. Since it is the facts which give rise to a cause of action and not the relief, an election of remedies is procedural, not substantive.

Secondly, we are supported in our conclusion that the doctrine of election of remedies is procedural by Bernstein v. United States, supra, wherein the court held that the doctrine of election of remedies is a rule of procedure or administration, and not a rule of substantive law.

In Dial Press, Inc. v. Phillips, 23 N.J. Super. 543, 93 A.2d 195, the court said:

"The doctrine of election of remedies is not a rule of substantive law, but rather of judicial administration. It has its foundation in the desire of the law to eliminate vexatious and multiple litigation of causes of action arising out of the same subject matter. * * *"

Thirdly, in an analogous situation it has been held, for the purpose of applying the appropriate statute of limitation to an amended complaint, that if the amended

complaint arises out of the general conduct, transaction or occurrence pleaded in the original complaint, the amendment relates back to the date of the original complaint. Rule 15(c), (§ 21–1–15(c), N.M.S.A., 1953 Comp.); Tiller v. Atlantic Coast Line Railroad Co., 323 U.S. 574, 65 S.Ct. 421, 89 L. Ed. 465; Bowles v. Tankar Gas, Inc., D.C., 5 F.R.D. 230. See also, Brown v. Dougherty, 74 N.M. 80, 390 P.2d 665.

■ We hold that the doctrine of election of remedies is not a doctrine of substantive law.

In their second point, appellants contend that appellees failed to establish by clear and convincing evidence the following necessary elements of fraud: (1) That appellants made a material representation; (2) that appellees acted in reliance on any representation; and (3) that appellees thereby suffered injury.

With regard to the contention that appellees failed to prove that appellants made a material representation, the argument is made that it is of little importance whether or not the salesman said the car was "new," since appellees knew that the car had mileage on it. This contention is without merit.

In Stewart v. Potter, 44 N.M. 460, 104 P. 2d 736, the factual situation was similar to the facts in the case before us. In that case, the plaintiff purchased a car when he thought and was told that it was a new car. At the time of the purchase, the speedometer read some 200 miles, but it developed that the car had been repossessed and had been driven some 1500 miles. Appellant's arguments in this case are strikingly similar to the arguments made in the Stewart case. This court held that a defrauded purchaser may recover the difference between the real and the represented value of the property, regardless of the fact that the actual loss suffered might have been less. We also quoted from 2 Berry on Automobiles, 6th Ed., 1414, as follows:

"'The purchaser of an automobile from a dealer or manufacturer, in the absence of an understanding or knowledge to the contrary, may assume that it is new.' * * *."

In Jones v. Norman, (Mo.1923), 248 S.W. 621, a case similar to the case before us, the court said:

"* * * A purchaser cannot be compelled to accept or keep a car which has been represented to him as a new car when it is in fact a secondhand car. He has a right to insist on getting what he bargained for. To say to a purchaser that a car is 'new' means more than that it is of the latest model. 'New,' under such circumstances, may and does include the idea that it is not a secondhand or used car. * * *"

■ We, therefore, hold that the use of the word "new" was, under the circum-

stances of this case, a material misrepresentation.

In the second argument under this point, appellants contend that appellees did not act in reliance since they had previously caught the salesman, Robert Morton, in a lie and that the doctrine of caveat emptor applies. Following Stewart v. Potter, supra, we find this argument without merit.

Appellants then contend that appellees suffered no injury, basing their argument upon the value of the trade-ins of the various parties. In Stewart v. Potter, supra, we held that, as to the measure of damages, we should apply the "benefit of bargain" rule. This has been defined as the difference between the real and the represented values of the item. Industrial Supply Company v. Goen, 58 N.M. 738, 276 P.2d 509. It has further been held that this measure of damages applies without regard to the price paid and, in the case of an exchange, without regard to the value of the property given in exchange by the party defrauded. Perry v. Schoonover Motors, Inc., 189 Kan. 608, 371 P.2d 152. Appellants' second point is without merit.

■ Appellants contend, in their third point, that the essential elements of fraud must be proved by clear and convincing evidence. Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299. Appellants then contend that the evidence in this case was not clear and convincing, based upon the trial court's decision when he said:

"THE COURT: This case is a difficult case in view of the fact that the testimony on both sides has been the strongest that each side could appear to make it. Insofar as the plaintiff is concerned, after hearing Mr. Honaker's testimony, the court felt he was a completely lucid and fair witness and made a very strong case, but after Mrs. Honaker testified the court felt that the case was considerably weakened. * * *"

We have reviewed the record and hold that the findings of fact, as to the essential elements of fraud, are supported by clear and convincing evidence.

■ In their fourth point, appellants contend that appellees failed to mitigate their damages. This contention is based upon the argument that appellees should have mitigated their damages when they first suspected fraud on November 16, 1961, when Mrs. Honaker noticed a discrepancy in the second "Retail Buyer's Order" form. This contention is also without merit. As we view the basis of measure of damages, as given by the trial court, it is for the difference between the real value of the car and the represented value of the car, and not for rental charges, storage charges, or any other item that appellees could have mitigated. We also note from the trial court's finding of fact No. 5, that the fraud

was not discovered until November 24, 1961; therefore, appellants' argument must fail due to a discrepancy in his dates.

Finding no error, the judgment is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.