260 P.2d 703

SANCHEZ v. SECURITIES ACCEPTANCE
CORP.

No. 5461.

Supreme Court of New Mexico.

Aug. 13, 1953.

Rehearings Denied Sept. 2 and 9, 1953.

McAtee & Toulouse, Serenea H. Green, Albuquerque, for appellant.

Dudley E. Cornell, William G. Fitzpatrick, Albuquerque, for appellee.

SEYMOUR, Justice.

Appellee, plaintiff below, asserting a right to possession, brought a replevin action against appellant, Securities Acceptance Corporation, alleging the wrongful taking and detention by appellant from appellee of a 1941 Buick sedan; appellee further alleged in specific terms subterfuge, misrepresentation, fraud and physical force in the seizure of the automobile by Securities Acceptance Corporation and, in the most general terms, alleged a cause of action for false imprisonment. Appellee sought judgment for possession of the automobile and damages, both actual and punitive, in an amount of $10,000.

Pursuant to the writ of replevin, the Sheriff took possession of the car. Appellant answered, denying all of the allegations of the complaint except those of venue and jurisdiction, and further expressly denied knowledge of the seizure, the authority of any agent to make the same, and re-

sponsibility for any violation of the civil rights of appellee.

■ The facts are these: Appellant, Securities Acceptance Corporation, sold the car to one Eduardo Sanchez, financing the purchase with the usual conditional sales contract or chattel mortgage security instrument. In due course, Eduardo Sanchez wrecked the car and, for repairs, he delivered it to Reuben Sanchez, the appellee, whose business was that of automobile body repairs and painting. Appellee completed the work, was paid in part, and, by virtue of his possession of the car, had a garageman's lien for the balance remaining due him. At this point, an individual named in the record as "Hale," acting for Securities Acceptance Corporation, came to the garage of appellee to take possession of the automobile. Hale, however, did not disclose his purpose, but claimed to be a prospective purchaser of the car sent by the owner, Eduardo Sanchez. By such misrepresentation of his purpose, he procured the help of appellee in getting the car started and himself in the driver's seat and, having accomplished this, started to drive the car away, over the protest of appellee; in a final effort to retain possession of the automobile, appellee jumped into the car as it was being driven away. During the next few moments and while appellee was trying to persuade Hale to return the automobile to appellee's garage, Hale further misrepresented his purpose, claiming that he wanted to take the car to the Southwest Finance Company to get an appraisal. By reason of a continuation of the misrepresentations of Hale as to his destination and as to his reason for driving the automobile, and by reason of appellee's determined effort to retain or regain possession of the car, the trip ended at the office of Securities Acceptance Corporation where the car was parked by Hale in an enclosure belonging to appellant, the entrance to which was locked immediately after the car entered it. After further protest by appellee in appellant's office, appellee eventually was forced to telephone a friend to come and get him and take him back to his garage, the car remaining with Securities Acceptance Corporation.

The following additional facts are significant: Through Hale, the automobile was seized on November 25, 1950; Complaint was filed November 30, 1950; on December 27, 1950, appellant, Securities Acceptance Corporation, made payment to appellee of the full amount remaining due appellee on his garageman's lien and the automobile, possession of which precipitated this litigation, was delivered by the mutual consent of both parties, through sale, to an unidentified third person. Therefore, the question of actual possession was removed from the case, leaving only the question of an unlawful taking and of false imprisonment.

The case was tried to a jury which returned the following verdict:

"We, the Jury, find the issues in favor of the Plaintiff and assess his actual damages in the sum of $ 0, and punitive damages in the sum of $1250.-00.

"s/ B. H. Brown

"Foreman"·

Immediately thereafter and before the jury was discharged, the following exchange took place between the trial judge and the foreman of the jury:

"The Court: Gentlemen of the Jury, is this your verdict?

"The Jurors: Yes.

"The Court: Did you make any independent allocation or determination of any of that, as to how much was for humiliation and how much for punishment, other than that?

"The Foreman: No.

"The Court: But the $1250.00 does include damages to his feelings, is that right?

"The Foreman: Yes.

"The Court: Do counsel wish to ask any questions?

"Counsel: No, sir."

The trial court entered judgment on the verdict for $1,250.

Upon appeal to this Court, appellant made twelve assignments of error which, for brief and argument, were comprehended in five points, one controlling point in the case being Point Three reading as follows:

"Point Three: That a plaintiff has the burden to prove the status of master and servant, employer and employee, and that act of the servant, or employee was within the scope of his employment, and that the evidence in this trial was not sufficient as a matter of law to sustain that burden, and that the judgment therefore cannot stand against the defendant."

This point is based in part upon Assignment of Error No. 2, addressed to the trial court's refusal to grant appellant's motion for a directed verdict. The grounds of the motion are somewhat confused but the question of law hereinafter discussed is deemed sufficiently raised, particularly in view of the following admission appearing at page 14 of appellee's brief:

"We concede, as contended for by appellant, that a plaintiff seeking recovery of actual and punitive damages from a corporate defendant under the respondeat superior doctrine must by a preponderance of the evidence prove the master-servant relationship, action within the scope of authority *and participation in the tort by the master by way of prior authorization, subsequent ratification or otherwise.*" (Italics ours.)

With regard to this point, it must be assumed that a part, if not all, of the moneys specified in the verdict of the jury and comprehended in the court's judgment were for punitive damages.

The question of the liability of a principal for punitive damages, as distinguished from compensatory damages, arising out of the actions of his agent, has already been passed upon by this Court. Justice Mabry, in the case of Stewart v. Potter, 44 N.M. 460, 104 P.2d 736, specifically dealt with the two lines of authority now existing on this question, and adopted as the law of New Mexico the rule set out by the United States Supreme Court in Lake Shore & M. S. Railway Co. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 263, 37 L.Ed. 97. This rule, as quoted from that case by Justice Mabry, is as follows [44 N.M. 460, 104 P.2d 740]:

> "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent."

Justice Mabry went on to state that, absent participation, authorization or ratification of the tortious act of the agent, the principal cannot be held liable for punitive damages. There must be proof in the cause to implicate the principal and make him particeps criminis of his agent's act. The cases in support of this rule are set out and carefully analyzed in the opinion of the United States Supreme Court cited above. In the particular case of Stewart v. Potter, supra, this rule resulted in the principal being relieved of a judgment for punitive damages arising out of a selling agent's false representation to a customer that a used car was new. There being a failure to show authority, knowledge or ratification by the principal of this misrepresentation, principal could not be held liable therefor in punitive damages. This Court, therefore, reversed the trial court's judgment as to punitive damages, although it affirmed the judgment as to compensatory damages against the principal.

The case of Miera v. George (Miera v. Joe Heaston Oil Co.), 55 N.M. 535, 237 P.2d 102, deals with related questions. The law of New Mexico, as set forth in these two cases, establishes the rule that a principal is liable for compensatory damages arising out of the tortious act of an employee acting within the scope of his authority as defined in the case of Miera v. George (Miera v. Joe Heaston Oil Co.), su-

pra; but the principal is not liable for punitive damages for the same act, unless it is proved, over and above the fact that the agent was acting within the scope of his authority, that the principal participated in, authorized, or ratified the actual tortious conduct of the agent.

■ Appellant, in the trial court, rested at the end of appellee's case and put on no evidence of any sort; in reviewing the evidence of appellee, we find none to support a necessary finding by the jury that Securities Acceptance Corporation, as such, participated in, authorized, or ratified the tortious conduct of Hale in taking possession of this automobile. Although there is sufficient evidence to justify the jury in finding that Hale was acting within the scope of his authority in taking possession, at no point in the case was there the slightest evidence establishing the position or duties of Hale with Securities Acceptance Corporation. The only other agent of appellant involved in this transaction was a person called Walker who came to appellee's garage the morning of the day on which the car was taken, and asked for the possession of the car; this same man, later that afternoon, was present in the office of Securities Acceptance Corporation when appellee protested the taking of the car; but here again there is no evidence as to who Mr. Walker was; insofar as the record is concerned, these two men could have been janitors or officers of the corporation, part-time employees or even automobile thieves. Since a corporation can act only through its officers, directors and authorized employees, the jury could only speculate on this evidence as to whether or not, and as to what extent, these two individuals had any power or right to act for the corporation. This idea is clearly stated in the opinion of the United States Supreme Court, Lake Shore & M. S. Railway Co. v. Prentice, supra, as follows:

"The president and general manager, or, in his absence, the vice president in his place, actually wielding the whole executive power of the corporation, may well be treated as so far representing the corporation and identified with it that any wanton, malicious or oppressive intent of his, in doing wrongful acts in behalf of the corporation to the injury of others, may be treated as the intent of the corporation itself; but the conductor of a train, or other subordinate agent or servant of a railroad corporation, occupies a very different position, and is no more identified with his principal, so as to affect the latter with his own unlawful and criminal intent, than any agent or servant standing in a corresponding relation to natural persons carrying on a manufactory, a mine, or a house of trade or commerce."

In the absence of some showing as to the identity of these two persons and as to what their position in the corporation might be, there could be no evidence upon which the jury could find the necessary participation or authorization of Securities Acceptance Corporation in the tortious conduct of its agents.

■ This leaves, therefore, only the question of whether the corporation, by its acts subsequent to the seizure, ratified the tortious act of its agents. In this connection, the record shows only that the automobile was originally seized November 25, 1950, and held by appellant for five days, when it was taken from appellant by the sheriff pursuant to appellee's writ of replevin. There is no testimony to show, prior to suit, any demand upon appellee or any knowledge upon the part of appellee as to the tortious character of the original taking. It cannot be argued that the payment by Securities Acceptance Corporation of the balance due on appellee's garageman's lien is a ratification of the tortious act. Appellant recognized the priority of appellee's lien and, with the consent of appellee, paid the balance of the lien on December 27, 1950, prior to filing an answer to appellee's original complaint. Appellant cannot now be penalized for having paid a proper claim. To find ratification in this act would tend to prevent the correction of wrongs when a party recognizes the wrong-

fulness of his position and desires to remedy it.

■ There being no evidence to support a finding by the jury that Securities Acceptance Corporation participated in, authorized or ratified the tortious acts of Hale and Walker, the judgment of the trial court must be reversed insofar as it relates to punitive damages.

There is a difficult question concerning the meaning of the jury's verdict in this case; it was raised by the interchange of remarks between the trial court and the foreman of the jury. Appellant has proceeded upon the basis that the verdict stands as originally read by the foreman of the jury, namely:

"We, the Jury, find the issues in favor of the Plaintiff and assess his actual damages in the sum of $ 0 , and punitive damages in the sum of $1250.-00.

"s/ B. H. Brown
"Foreman"

No objection was made by appellant and, in his brief, he has assumed that the verdict was for punitive damages alone. Appellee has proceeded on the opposite theory; he contends, as a result of the exchange between the trial court and the foreman of the jury, that the verdict includes both actual and punitive damages; he further contends that, even though the jury be said to have found no actual damages, such damages

were shown as a matter of fact, and the showing thereof is sufficient to sustain a judgment for punitive damages.

 There is no question in New Mexico concerning the power of a trial court to amend or clarify an incomplete or ambiguous verdict, Johnson v. Mercantile Ins. Co. of America, 47 N.M. 47, 133 P.2d 708; Holloway v. Evans, 55 N.M. 601, 238 P.2d 457; Di Palma v. Weinman, 16 N.M. 302, 121 P. 38. This, indeed, is in line with the overwhelming weight of authority; the cases are collected 116 A.L.R. 845, 8 A.L.R. 2d 864. A reading of these cases, however, indicates that such action on the part of the court is always limited by the overriding consideration that the amended verdict constitute the verdict of the jury as a whole, and be in fact the verdict of the jury. The annotation appearing at 164 A.L.R. 989 entitled: "Propriety of court questioning jury as to meaning of their verdict, or for purpose of correcting it in matters of form," cites many cases dealing with situations similar to that here presented. The general rule is stated as follows:

"It is well settled that a trial court, in the absence of statute, has the power, in its discretion, to inquire of the jury upon its return of the verdict, as to the grounds or principle upon which the verdict is based, and that no exception lies to the exercise of such discretion."

The cases seem to support the further idea that the foreman can speak for the jury as a whole. Even in the light of these cases, this Court questions the propriety of the amendment here made, since the original verdict was entirely specific and was completed literally in the form of verdict submitted. Since, however, there was no objection on the part of appellant and the error, if any, has not been reserved, this Court will treat the verdict as amended. Taken as amended, the verdict comprehends both compensatory and punitive damages without any segregation as to the amounts. The judgment for punitive damages must be reversed and it follows, therefore, that appellee is entitled to a new trial to determine his right to actual damages and the amount thereof, unless the additional points raised by appellant dictate otherwise. They do not so dictate.

Point One asserts that a verdict for punitive damages without a finding of actual damages cannot stand as a matter of law. Since this Court takes the verdict of the jury as having included an undisclosed amount of compensatory damages, this point need not be decided.

Point Two attacks the pleading, and Point Four the evidence relating to the issue of false imprisonment. In view of the increased flexibility in the rules of pleading and amendment, this Court finds no

merit in Point Two, N.M.R.Civ.Proc. 8(e)(1), 15(b) and 61.

■ As to Point Four and the evidence introduced by appellee at trial, there was sufficient to sustain a jury in finding a false imprisonment. Both parties quote with approval the following rule relating to false imprisonment, (11 R.C.L. 793):

"In order to constitute a case of false imprisonment it is essential that there should be some direct restraint of the person; but to constitute 'imprisonment' in the sense in which the word is here used, it is not necessary that there should be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or *to go where he does not wish to go, is an imprisonment.*" (Italics ours.)

The case of National Bond & Investment Co. v. Whithorn, 276 Ky. 204, 123 S.W.2d 263, cited by appellant, cannot be distinguished from the present case upon the grounds argued in appellant's brief. In that case, the imprisoned person voluntarily entered the car to retain possession thereof, and was hauled away in his car by means of a wrecker. There is no substantial difference in the "force" involved in moving a car with a wrecker and moving it, as here, by the pulling power of its own engine. Equally conclusive of this point is the testimony of appellee, undisputed by appellant, that at the time Hale parked the automobile in the enclosure of Securities Acceptance Corporation, some unidentified person ran and locked a gate on the enclosure, and Hale, himself, disappeared, thus requiring appellee to find his way into and through the office of appellant in order to get out of the locked enclosure.

Point Five concerning the trial court's refusing to submit to the jury special interrogatories requested by appellant need not be considered.

The judgment of the trial court will be reversed insofar as it relates to punitive damages, and the cause is remanded to the trial court, granting appellee a new trial as to his right to compensatory damages.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON and LUJAN, JJ., concur.