577 P.2d 1245

SAMEDAN OIL CORPORATION,
Petitioner,

v.

Elizabeth NEELD, Administratrix of the
Estate of John Wesley Neeld, Jr.,
Deceased, Respondent.

No. 11628.

Supreme Court of New Mexico.

April 6, 1978.

Rehearing Denied May 8, 1978.

McCormick & Forbes, Carlsbad, for petitioner.

Dick A. Blenden, Carlsbad, for respondent.

Rodey, Dickason, Sloan, Akin & Robb, William A. Sloan, Keleher & McLeod, Ranne Miller, Modrall, Sperling, Roehl, Harris & Sisk, Joseph E. Roehl, Albuquerque, for amici curiae.

## OPINION

FEDERICI, Justice.

This case was brought in the District Court of Eddy County to recover damages

for the wrongful death of John Wesley Neeld, Jr. Plaintiff-appellee (plaintiff), as administratrix of the decedent's estate, and pursuant to § 22–20–3, N.M.S.A.1953, sought to recover $500,000.00 compensatory damages and $1,000,000.00 punitive or exemplary damages.

The record reveals that defendant-appellant Samedan Oil Corporation (defendant), a foreign corporation authorized to transact business in New Mexico, was the owner of a gas well located south of Carlsbad, New Mexico. At the time of decedent's death that well had been completed and was ready to be put on the pipeline. The well, described as a dual completion well capable of producing gas from two formations, was equipped with two hydrocarbon separator units, or "stackpacks," which are heater-separator units for gas distillate wells having an internal gas burner-heater. These hydrocarbon separator units, as installed on the defendant's well, are equipped with a type of safety release mechanism designed to allow gas to escape into the atmosphere should the pressure within the unit exceed a certain level.

The record further reveals that the defendant's district production foreman personally conceived and designed a vent system which he caused to be installed on the stackpacks' safety release mechanisms. The installation was carried out, under the direction of defendant's district production foreman, by a local roustabout crew hired by him on an hourly basis for that purpose. The uncontradicted testimony in the case indicates that the district production foreman's purpose in installing the vent system was to avoid a possible explosion caused by contact between escaping gas and the flame in the stackpacks' internal gas heater-burner. The vent system, however, was improperly designed and was constructed, under the direction of the district production foreman, of pipe not rated for the high pressure associated with defendant's well.

The decedent was a "pumper" employed by an Artesia firm which had a contract with defendant to pump the well. The decedent, on August 29, 1975, went to the well at defendant's request to make preparations to put it on stream so that the gas could be sold and delivered to a contract purchaser. The well was a dual completion well capable of producing gas from both the Morrow and the Strawn formations. On the day of his death decedent turned the valve to release the gas from the Morrow formation without mishap. He then turned the valve to release gas from the Strawn formation and, due to some unknown blockage in the line, the pressure built up and caused the stackpacks' safety release mechanism to release. Instead of escaping into the atmosphere, however, the released gas continued its course into the vent system designed by the district production foreman. The vent system burst, causing decedent to be struck on the head and instantly killed by a part of the pipe of which it was made.

At the conclusion of a jury trial a verdict was returned for $300,000.00 compensatory damages and $1,025,000.00 punitive or exemplary damages. Defendant's alternative motions for judgment n. o. v. or for a new trial were denied, and the punitive award was reduced by the district judge to conform to the amount sought in the complaint ($1,000,000.00). Defendant subsequently appealed the judgment to the New Mexico Court of Appeals. The Court of Appeals affirmed the judgment of the trial court in all respects, and defendants petitioned for a writ of certiorari in this Court. We granted certiorari, and we now affirm the judgment of the Court of Appeals and the trial court on the issue of compensatory damages but reverse on the issue of exemplary or punitive damages.

*COMPENSATORY DAMAGES.*

Defendant admits that there was sufficient evidence for the jury to return a verdict for actual or compensatory damages against it, on the theory of defendant's vicarious liability for the negligent act of its employee, the district production foreman.

■ Defendant contends, however, that the verdict of $300,000.00 for actual dam-

ages was excessive, not supported by the evidence, and a result of passion and prejudice on the part of the jury or a mistake as to the measure of damages. We decline to disturb the verdict and judgment on this point.

"There is no fixed standard for measuring the value of a life, and, as in personal injury cases, wide latitude is allowed for the exercise of the judgment of the jury in fixing the amount of such an award." *Baca v. Baca*, 81 N.M. 734, 741, 472 P.2d 997, 1004 (Ct.App.1970). It is not the appellate function to weigh the evidence of damages. Rather, it is our function to determine the question of excessiveness as a matter of law in accordance with the rules established for such review in this jurisdiction. *Hughes v. Walker*, 78 N.M. 63, 428 P.2d 37 (1967). Those rules, which are well established, have been most recently reiterated in *Gonzales v. General Motors Corporation*, 89 N.M. 474, 480, 553 P.2d 1281, 1287 (Ct.App.1976), where it was said:

> The question of excessiveness is determined by (1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award, and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder.

The evidence viewed in the light most favorable to the plaintiff substantially supports the award. The award of compensatory damages does not raise an irresistable inference that passion, prejudice or other improper cause invaded the trial or the verdict of the jury. *See Barnes v. Smith*, 305 F.2d 226 (10th Cir. 1962). The judgment on the issue of compensatory damages will stand.

### PUNITIVE DAMAGES.

■ It is the established law of New Mexico that punitive or exemplary damages may be awarded "only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton dis-

regard of the plaintiffs' rights." *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 747, 418 P.2d 191, 199 (1966). In this case, even if we assume that the conduct of defendant's district production foreman in designing and ordering the installation of the totally defective safety vent system was conduct which might be characterized as maliciously intentional, reckless or wantonly unmindful of the rights of the decedent, the real issue is whether there was a factual basis for an award of punitive damages against the defendant.

■ "The rule is well established in New Mexico that the principal, or master, is liable for punitive or exemplary damages *only* in cases where the principal or master has in some way authorized, participated in or ratified the acts of the agent or servant, which acts were wanton, oppressive, malicious, fraudulent or criminal in nature." *Couillard v. Bank of New Mexico*, 89 N.M. 179, 181, 548 P.2d 459, 461 (Ct.App.1976). This rule is derived from a long line of New Mexico case law, of which *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736 (1940) is the leading decision. The meaning of *Stewart v. Potter* was very clearly expressed in a subsequent case, *Sanchez v. Securities Acceptance Corp.*, 57 N.M. 512, 260 P.2d 703 (1953), where it was said:

> The question of the liability of a principal for punitive damages, as distinguished from compensatory damages, arising out of the actions of his agent, has already been passed upon by this Court. Justice Mabry, in the case of *Stewart v. Potter*, 44 N.M. 460, 104 P.2d 736, specifically dealt with the two lines of authority now existing on this question, and adopted as the law of New Mexico the rule set out by the United States Supreme Court in *Lake Shore & M. S. Railway Co. v. Prentice*, 147 U.S. 101 [13 S.Ct. 261, 37 L.Ed. 97] * * * This rule, as quoted from that case by Justice Mabry, is as follows [44 N.M. 460, 104 P.2d 740]:
>
> > "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a

warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent."

Justice Mabry went on to state that, absent participation, authorization or ratification of the tortious act of the agent, the principal cannot be held liable for punitive damages. There must be proof in the cause to implicate the principal and make him particeps criminis of his agent's act.

57 N.M. at 516, 260 P.2d at 706. To state the same principle more succinctly, we have adopted the rule that a master or principal is not liable for punitive damages unless it can be shown that in some way he also has been guilty of the wrongful motives upon which such damages are based.

The jury instructions given by the trial court in this case did not inform the jury of the fundamental principles of New Mexico law applicable to punitive damages against a master or principal. The instructions delivered by the trial court which are relevant to this appeal are as follows:

### INSTRUCTION NO. 3

A corporation can act only through its officers and employees. Any act or omission of an officer or an employee of a corporation within the scope or course of his employment is the act or omission of the corporation.

### INSTRUCTION NO. 8

When I use the expression "willful and wanton conduct" I mean a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others.

### INSTRUCTION NO. 16

If you find that the conduct of Defendant was willful and wanton and proximately caused damage to Plaintiff, and if you further find that justice and the public good require it, you may award Plaintiff, in addition to any compensatory damages to which you find Plaintiff entitled, an amount by way of example or punishment, as punitive damages, which will serve to punish the Defendant and to deter others from the commission of like offenses.

Unless compensatory damages are first found, punitive damages cannot be awarded.

The above instructions given by the court are identical with U.J.I. instructions 4.11, 12.9 and 14.25, respectively. The Committee Comment to N.M. U.J.I. Civ. 14.25 reads:

There is no vicarious liability for punitive damages in the absence of participation, authorization or ratification of the tortious conduct by the master or principal. (Citations omitted.)

Section 21–1–1(51), N.M.S.A.1953 (Repl. 1970) provides that it is the duty of the district court to instruct the jury regarding the law applicable to the facts in the cause. The rule also provides that New Mexico Uniform Jury Instructions approved by the Supreme Court shall be used unless under the facts or circumstances of the particular case, the published uniform jury instruction is erroneous or otherwise improper and the trial court so finds and states of record its reasons. The rule further provides that if the court determines that the jury should be instructed on a subject and no applicable instruction is found in the uniform jury instructions, the instruction given on that subject shall be brief, impartial and free from hypothesized facts.

Appellant called to the attention of the trial court the law applicable to punitive damages when appellant moved for a directed verdict after appellee's case. Appellant again called it to the attention of the trial court at the end of the entire case by objection to Instructions Nos. 3, 8 and 16 given by the court.

In New Mexico employers may be vicariously liable for *compensatory* damages

which result from torts of employees acting within the scope of their employment, regardless of the culpability of the employer. *Childers v. Southern Pacific Company*, 20 N.M. 366, 149 P. 307 (1915). This doctrine of respondeat superior or vicarious liability is expressed in N.M. U.J.I. Civ. 4.11, delivered to the jury in this case as Instruction No. 3, *supra*. Although this instruction sets forth the law of New Mexico on compensatory damages, it incorrectly states the law on punitive damages. Whether or not an employee is acting "within the scope or course of his employment" is not the standard under which punitive damages may be assessed against his employer. This point of law was clearly settled in *Sanchez v. Securities Acceptance Corp., supra*, where we said:

> The law of New Mexico, as set forth in [*Stewart v. Potter, supra*, and *Miera v. George*, 55 N.M. 535, 237 P.2d 102 (1957)] establishes the rule that a principal is liable for compensatory damages arising out of the tortious act of an employee acting within the scope of his authority . . .; but the principal is not liable for punitive damages for the same act, unless it is proved, *over and above the fact that the agent was acting within the scope of his authority, that the principal participated in, authorized, or ratified the actual tortious conduct of the agent.* (Emphasis added.)

*Id.* 57 N.M. at 516–517, 260 P.2d at 706–707.

We are aware that authority exists for a result contrary to that reached by us here. The most frequently quoted statement of the contrary rule occurs in *Stroud v. Denny's Restaurant, Inc.*, 271 Or. 430, 435, 532 P.2d 790, 793 (1975). *Stroud* says:

> A majority of courts have adopted the rule that, if a servant has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the servant's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages. (Citations omitted, footnote omitted.)

This view has been repeatedly drawn to the attention of New Mexico courts, and has been consistently rejected. Judge Sutin phrased both the issue and the answer precisely in *Couillard v. Bank of New Mexico, supra*, when he said:

> The century old controversy in the courts over punishment of the principal or master by payment of punitive damages rests upon a philosophical concept. Should an innocent principal or master pay the penalty for failure to exercise closer control of its agents? New Mexico has said "No" . . . . .

89 N.M. at 184, 548 P.2d at 464.

The jury in this case should have been instructed that there is no vicarious liability for punitive damages on the part of a master or principal absent participation, authorization or ratification of the tortious conduct.

The judgment of the trial court is affirmed on compensatory damages and reversed on punitive damages, and the cause is remanded for a new trial and further proceedings consistent with this opinion.

IT IS SO ORDERED.

McMANUS, C. J., and PAYNE, J., concur.

EASLEY and SOSA, JJ., dissent.

EASLEY, Justice, dissenting.

The law regarding the liability of a corporation for punitive damages for the acts of one of its employees has been subject to considerable controversy and change in recent years. There are at least three well-established views on the subject. The New Mexico cases and the majority of the Court in this case espouse the more conservative of the three legal principles. Insofar as the principles apply to the specific facts at issue in this case, they are, in simplified form, as follows:

1. The New Mexico rule holds that it must be shown that there was participation, authorization or ratification of the agent's tortious conduct by the principal. *Couillard v. Bank of New Mexico*, 89 N.M. 179, 548

P.2d 459 (Ct.App.1976); *Stewart v. Potter,* 44 N.M. 460, 104 P.2d 736 (1940).

2. A substantial number of jurisdictions follow the view adopted by the Restatement (Second) of Agency § 217(C) (1958) which holds the principal liable for the tortious act of an agent who is employed in a managerial capacity and acting in the scope of his employment. *Stroud v. Denny's Restaurant, Inc.,* 271 Or. 430, 532 P.2d 790 (1975). *See generally* Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Ore. L.Rev. 175 particularly at 233–39 (1965).

3. It is said that a majority of the jurisdictions have adopted the rule that, if an agent has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the agent's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages. *Stroud v. Denny's Restaurant, Inc., supra; see generally* W. Prosser, Torts § 2 at 12 (4th ed. 1971).

It is my view that the law on this issue is ripe for a change in New Mexico. The more liberal third alternative, *supra,* is not persuasive. However, this Court should adopt the second alternative and its philosophical concept that a corporation, which can act only through agents, should be subject to punishment for torts committed by its managerial agents. The rationale is that penalties may be inflicted if corporate officials fail to exercise close control of their managerial personnel. W. Prosser, *supra*; C. McCormick, Damages § 80 at 284–85 (1935).

I respectfully dissent.

SOSA, concurs in the dissent.