584 P.2d 168

Jay CORNELL and Joseph Minichello,
Plaintiffs-Appellees,

v.

ALBUQUERQUE CHEMICAL CO., INC.,
Defendant-Appellant.

No. 3018.

Court of Appeals of New Mexico.

Aug. 8, 1978.

Orville C. McCallister, Steven R. Fairfield and Bruce H. Strotz, McCallister, Fairfield, Query & Strotz, Albuquerque, for defendant-appellant.

John M. Eaves and John L. Hollis, Kool, Kool, Bloomfield & Eaves, P. A., Albuquerque, for appellee Cornell.

Joseph M. Fine, Albuquerque, for appellee Minichello.

## OPINION

SUTIN, Judge.

A judgment was entered in favor of Cornell and Minichello against defendant growing out of a conversion by defendant of a tree sprayer owned and possessed by Cornell, and a subsequent sale to Minichello. Trial was before the court. The trial court awarded Cornell and Minichello compensatory and punitive damages. Defendant appeals. We affirm.

The trial court found:

Cornell had been in the business of tree spraying and tree surgery in Albuquerque. Defendant was engaged in wholesale distribution of agricultural and lawn supplies, chemicals and equipment.

On August 1, 1974, Cornell was the owner and in possession of the tree sprayer located at, and used in, his business. On that date Phil Baxter, the vice-president of defendant corporation, and another authorized agent came to Cornell's property, took and unlawfully converted this sprayer to their own use and benefit without Cornell's knowledge.

On June 17, 1975, Minichello purchased this tree sprayer from defendant. In this sale, Phil Baxter represented that the defendant possessed a valid title to the sprayer; that it had been repossessed, and that defendant had obtained title through the judicial system. The bill of sale by which defendant allegedly received title was a false document.

Defendant knew that it did not possess valid title and intended that Minichello would rely on its false representation, and Minichello did rely.

On September 27, 1975, Cornell discovered that Minichello had purchased the sprayer from defendant and on December 31, 1975, Cornell regained possession from Minichello.

In his conversion of Cornell's sprayer, Phil Baxter was wielding the executive power of the defendant corporation; that his wanton, malicious and oppressive intent in doing wrongful acts on behalf of the corporation should be treated as the intent of the corporation itself.

Defendant only challenged the trial court's finding that Cornell was the owner of the sprayer on August 1, 1974, the finding relative to Phil Baxter's conduct, and the findings on compensatory and punitive damages.

A. *Cornell was the owner and Possessor of the sprayer on August 1, 1974.*

Defendant's first point is directed to Finding No. 6. It reads in pertinent part:

On or about August 1, 1974, Plaintiff Jay Cornell was the owner and had possession of a certain sprayer described as follows: a Hudson tank and sprayer with a Meyers pump

.　　.　　.　　.　　.

The burden was on defendant to prove this finding erroneous. Defendant introduced in evidence Cornell's Voluntary Petition in Bankruptcy, filed July 23, 1974, his Report of Exempt Property, and the Petitions and Orders of Abandonment of Property by the Trustee in Bankruptcy and the Referee, filed on August 19, 1974, and August 30, 1974. The sprayer mentioned in the finding was not abandoned.

Defendant claims that "The undisputed evidence shows that title to the sprayer had vested with the trustee-in-bankruptcy, on July 23, 1974, when the plaintiff, Cornell, filed his petition in bankruptcy."

Cornell was adjudicated a bankrupt on July 23, 1974, 11 U.S.C.A. *Bankruptcy*, § 41(f) (1977 P.P.). Did title vest with the Trustee in Bankruptcy on July 23, 1974, long prior to his qualification and appointment? The answer is "no."

Defendant relies on *Broadmoor Enter. Corp. v. G.L.G. Iron Works Co.*, 84 Misc.2d 120, 374 N.Y.S.2d 1013 (1975). Defendant misread this case. *Broadmoor* involved a general assignment for the benefit of creditors prior to bankruptcy. When property is held by such an assignee, title to the bankrupt's property does pass to the trustee at the date of filing the petition. 11 U.S.C.A. *Bankruptcy*, § 110(a)(8). This is not the rule in the absence of such a prior assignment. The *Broadmoor* court said:

The law is settled that while the filing of the petition operates in the nature of an attachment upon the bankrupt's assets, *his title is still not divested until the election, qualification and appointment of the trustee. Until such procedures are consummated, the bankrupt has defeasible title* sufficient to authorize the institution and maintenance of a suit or the filing of any claim possessed by him. [Emphasis added.] [374 N.Y.S.2d at 1017.]

A "defeasible title" is "one that is liable to be annulled or made void, but not one that is already void or an absolute nullity." Black's Law Dictionary (Rev. 4th

Ed. 1968) p. 506; *Home Insurance Company of New York v. Dalis,* 206 Va. 71, 141 S.E.2d 721 (1965); *Elder v. Schumacher,* 18 Colo. 433, 33 P. 175 (1893), Elliott, J., dissenting.

The *Broadmoor* rule was borrowed from *Johnson v. Collier,* 222 U.S. 538, 32 S.Ct. 104, 56 L.Ed. 306 (1912); *Danciger, Etc. Oil Co. v. Smith,* 276 U.S. 542, 48 S.Ct. 344, 72 L.Ed. 691 (1928); and *Rand v. Iowa Cent. R. Co.,* 186 N.Y. 58, 78 N.E. 574 (1906). In *Johnson,* the court said:

> While for many purposes the filing of the petition operates in the nature of an attachment upon choses in action and other property of the bankrupt, *yet his title is not thereby divested. He is still the owner, though holding in trust until the appointment and qualification of the trustee,* who thereupon becomes "vested by operation of law with the title of the bankrupt" as of the date of adjudication. [Emphasis added.]

Defendant also relies upon 4A Collier on Bankruptcy (14th Ed.), § 70.05(4) (1976). The pertinent part reads:

> *Section 70a, (Section 110) however, retains the fictional device of relation back,* for it is provided that "the trustee . . *upon his . . . appointment and qualification,* shall . . . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act." [pp. 67–68.] [Emphasis added.]

This "fictional device" is simply a restatement of the rule set forth in § 70.04:

> Section 70a provides that the trustee . . . *upon his . . . appointment* . . . shall in turn be vested by operation of law as of the date of the filing of the petition with the title of the bankrupt to all the property enumerated in the subdivision. [Emphasis added.]

The crucial question is: When was the trustee in bankruptcy appointed? Was it before or after August 1, 1974? Upon whom rests the burden of proof? Defendant denied that Cornell was the owner and possessor of the sprayer on August 1, 1974. A defendant who seeks to defeat a plaintiff's claim must present the necessary substantial evidence. To establish that Cornell was divested of title, the burden rested on defendant to show that the trustee was appointed prior to August 1, 1974. Defendant failed to do so. Defendant, for some unexplained reason, did not produce the Order and the date thereof, under which the trustee was appointed by the Referee in Bankruptcy.

Cornell's Answer Brief stated that the trustee was appointed August 13, 1974. Briefs are, of course, not the avenue to travel to establish a fact on appeal. If counsel made a false statement, it would jeopardize his position in this appeal. If the attorney who made the statement did not examine the bankruptcy records and falsified the statement made, the attorney would be guilty of misconduct under Rule 1–102 of the Code of Professional Responsibility, [Section 18–5–1 (Rule 1–102), N.M.S. A.1953 (Repl.Vol. 4, 1975 Supp.)].

In its Reply Brief, defendant did not deny the truth of Cornell's statement. It said:

> This assertion is not to be found in the record of this case and may not properly be considered on appeal. *Assuming that Cornell's assertion is true,* moreover, does not change Cornell's situation.

Defendant, with apparent knowledge of the date of the trustee's appointment, avoided the admission of the truth of Cornell's statement.

In its Brief-in-Chief, defendant also said:

> The record shows, without contradiction, that the bankruptcy trustee . . *was, in fact, administering the bankrupt's estate after August 1, 1974,* although the exact date of his appointment does not appear therein. [Emphasis added.]

From the foregoing statements made by the parties in their briefs, a reasonable inference can be drawn that the Trustee in Bankruptcy was duly appointed *after* August 1, 1974.

On August 1, 1974, Cornell was the owner of the sprayer and had actual physical possession of the sprayer. The finding of the

trial court is sustained, both on the facts presented and the statements made by the parties in their briefs on appeal.

B. *Cornell was the party in whom a cause of action for conversion existed.*

■ It is defendant's position that the Trustee in Bankruptcy, not Cornell, was the sole party in interest with a cause of action for conversion of the sprayer; that his absence is a jurisdictional defect. Defendant did not challenge the finding of the trial court that it had jurisdiction, but claims that a jurisdictional question can first be raised on appeal. To resolve this issue, we shall decide the question on the merits.

Defendant says that Cornell cannot institute a suit in his own name *pending* bankruptcy proceedings. 9 Am.Jur.2d, *Bankruptcy*, § 877 (1964). In effect, this was a defense to Cornell's cause of action. The burden of proof is on defendant to show that at the time suit was filed, the bankruptcy proceedings were pending.

Defendant took the sprayer from Cornell's property on August 1, 1974. Cornell did not discover its whereabouts until September 1975. On July 16, 1976, two years after the petition in bankruptcy had been filed, Cornell filed his claim against defendant.

Was the Cornell bankruptcy *pending* on July 16, 1976? Cornell again states in his Answer Brief that Cornell was discharged on October 17, 1974 and the bankruptcy closed on December 6, 1974. Defendant again says in its Reply Brief that these facts are not of record.

We do not commend either of the parties for failure to produce the bankruptcy record as evidence in the trial court. Defendant brought forward only that portion of the record that it believed to be favorable to its defense. We must assume that defendant knew whether Cornell's statements were true, but it did not deny their truth. Neither do we believe that Cornell falsified the facts.

We hold that defendant had the burden of showing that the bankruptcy proceeding had not closed before July 16, 1976, the time Cornell's complaint was filed. Defendant failed in this regard.

The 150 gallon sprayer was not formally abandoned by the trustee so that on July 16, 1976, Cornell had ownership of the sprayer or the right to possession as of August 1, 1974, the time of conversion. His action for conversion lies. *Aragon v. General Electric Credit Corp.*, 89 N.M. 723, 557 P.2d 576 (Ct.App.1976).

At the time of filing the complaint, Cornell was the sole party in which the cause of action for conversion existed.

C. *Cornell and Minichello were entitled to compensatory damages.*

■ Defendant challenged the trial court's findings that awarded Cornell and Minichello compensatory damages in the sums of $1,500 and $2,000 respectively.

New Mexico has adopted as the measure of damages for conversion of a chattel, that measure set forth in the Restatement of Law, Torts, Vol. IV, page 647, § 927. *Frank Bond & Son, Inc. v. Reserve Minerals Corp.*, 65 N.M. 257, 261, 335 P.2d 858 (1959).

In an action for conversion, "the damages include

(a) the exchange value of the subject matter or the plaintiff's interest therein at the time and place of the conversion . . . and

(b) the amount of any further loss suffered as the result of the deprivation, and

(c) interest from the time at which the value is fixed or compensation for the loss of use."

Defendant did not challenge the court's Finding No. 16 that Cornell and Minichello suffered damages. Therefore, recovery will not be denied because the damages are difficult of ascertainment. Although there may be some uncertainty respecting the amount of damages sustained, it is enough if the evidence presented is sufficient to enable the court to make a fair and reasonable approximation. *Frank Bond & Son,*

*Inc.*, supra; *Crosby v. Basin Motor Company*, 83 N.M. 77, 488 P.2d 127 (Ct.App.1971).

We have reviewed the evidence on damages proven by plaintiffs. We conclude that the court made a fair and reasonable approximation. The trial court's findings on compensatory damages are sustained.

D. *Cornell and Minichello were entitled to punitive damages.*

 The trial court made the following findings that were not challenged:

7. On or about August 1, 1974, . . . Phil Baxter Vice-President of the Defendant Company and another agent *authorized by the Defendant Company* came on Plaintiff Cornell's property without his knowledge and took and unlawfully converted such personal property to their own use and benefit.

\* \* \* \* \* \*

9. *The Defendant, through its authorized agent*, Phil Baxter, represented to Joseph Minichello that it possessed valid title to such sprayer.

10. *The Defendant, through its authorized agent*, Phil Baxter, represented to Joseph Minichello that the sprayer had been repossessed and that Albuquerque Chemical Company, Inc. had obtained title through the judicial system.

11. The *Defendant knew* that it did not possess valid title to the sprayer in question at the time of the sale to Joseph Minichello.

12. The *Defendant intended* that Joseph Minichello would rely upon its false representation that it had valid title.

13. Joseph Minichello did in fact rely upon the *Defendant's representation* that it had valid title.

14. *The Bill of Sale, by which the Defendant* allegedly received title to the , sprayer, was a false document. [All emphasis added.]

Defendant challenged Finding No. 18. It read:

18. In his conversion, Phil Baxter . . was wielding the executive power of the corporation and thus was representing the corporation and should be identified with the corporation. *Thus Phil Baxter's wanton, malicious and oppressive intent in doing wrongful acts on behalf of the corporation to the injury of plaintiff Cornell should be treated as the intent of the corporation itself.* [Emphasis added.]

For more than 10 years, Mr. Baxter was vice-president of the defendant corporation and ran the business. The other officers were his father and mother. Baxter bought and sold used equipment, managed the employees, hired and fired them, signed the checks, did its mechanical and janitorial work and any of the duties necessary in running the business. He was in charge of the day-to-day functions of the business. In the performance of all his functions, he acted on behalf of the corporation. No other officers or board members, if any, performed any duties. It was a family corporation with Baxter as the one man who "wielded the executive power of the corporation." He was authorized to commit these acts.

We have researched the record, the transcript and defendant's briefs. We are unable to find any evidence or statements made that justify Baxter's conduct in taking Cornell's property and selling it to Minichello, or any challenge to the trial court's findings that Baxter's conduct in doing these wrongful acts were authorized by, and done on behalf of defendant. Baxter entered Cornell's property without Cornell's knowledge or consent and took Cornell's property. This conduct is likened unto trespass and larceny. His acts were the acts of defendant. They were committed with a wanton disregard of Cornell's rights and as a fraud against Minichello. We stand firm on our judicial concept that fairness, justice and right dealing is an equity concept that dominates all commercial practices and transactions. *Ott v. Keller*, 90 N.M. 1, 558 P.2d 613 (Ct.App.1976).

Punitive damages is a penalty awarded against a corporation whose vice-president wields the whole executive power of the corporation. His wanton, malicious or oppresıve intent in the doing of the wrongful

acts in behalf of the corporation to the injury of another, may be treated as the intent of the corporation. *Couillard v. Bank of New Mexico*, 89 N.M. 179, 548 P.2d 459 (Ct.App.1976). Punitive damages may also be awarded where a corporation authorized the actual tortious conduct of its officer or employee. *Sanchez v. Securities Acceptance Corp.*, 57 N.M. 512, 260 P.2d 703 (1953). To state the same principal more succinctly, the Supreme Court has adopted the rule that a master or principal is liable for punitive damages if it can be shown in some way that he also was guilty of the wrongful motives upon which such damages are based. *Samedan Oil Corporation v. Neeld*, 91 N.M. 599, 577 P.2d 1245 (1978).

Defendant and Baxter walked in the same shoes during the conversion of Cornell's property and the fraud committed on Minichello. Defendant was guilty of the wrongful motives of Baxter as found by the trial court.

Cornell and Minichello were entitled to punitive damages.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.